Good morning. Our first case on the call of the docket today, Tuesday, March 13, 2012, is agenda number one, case number 111781, People v. Dennis A. Hackett. Counsel for the appellant? Good morning, Your Honors. Mr. Castio. May it please the Court, my name is David Iskovic. I'm with the Illinois Attorney General's office on behalf of the people. The issue in this case is whether Deputy Michael Bluin of the Will County Sheriff's Department had reasonable suspicion to stop the defendant for what he perceived was a violation of Section 11709A of the Vehicle's Code. That provision of the code requires that a motorist who is driving on streets that are designated for more than one lane of traffic remain within his lane if at all practicable. The facts in this case show that Deputy Bluin had seen the defendant on two occasions breach the northbound lane of Briggs Street in Joliet. He actually saw the defendant's tires cross over the dividing line marking the two northbound lanes of Briggs Street and on that basis pulled him over for a violation of Section 11709, after which he discovered evidence that the defendant was driving on a revoked license and was driving under the influence of alcohol. The appellate court, however, largely adopting the reasoning of the trial court, which had granted the defendant's motion to suppress and quash evidence, determined that Deputy Bluin did not in fact have reasonable suspicion to make the traffic stop under the parameters of 11709A and it rested this judgment on two grounds. First, it determined that the defendant was not driving an appreciable distance over the lane dividing line, such that it would cause a reasonable officer to suspect a violation of the provision. And secondly, it determined that because the defendant was not endangering anyone in his lane breaches, a reasonable officer could not similarly suspect a violation of this provision of the Vehicle's Code. Counsel, that's a very basic question right there that I have. In order to have a code violation for improper lane usage, do we need to consider whether the defendant was driving unsafely? In other words, is it a lack of safety, a necessary element of the code violation, or just crossing the line? That would tend to go into the endangerment aspect. And the answer is that, no, we don't need to look at safety as far as a violation of this provision is concerned. Whether they cross the line. Whether they cross the line. This Court held as much in People v. Smith in 1996. It expressly rejected the defendant's contention that a violation of Section 1109 does not occur when a defendant momentarily crosses a lane line, but occurs only when the motorist endangers others while moving from a lane of traffic. This Court's decision as Smith was driven by the plain text of the statute 11709A, which contains no provisions allowing for an out if there's no endangerment, or if the lane breach is only momentary or for an insignificant amount of time or distance. In People v. Smith, the Court did talk about the distance, and, of course, the defendant tried to distinguish that in this case. Is it relevant at all under your interpretation of Smith or what the law is? It's not irrelevant, Your Honor. That's because the distinction between Smith and the case at bar, and unfortunately here we don't know from the record how long, as far as time is concerned, how long the lane breaches were. But the dissenting Justice noted aptly that that can be kind of a misleading consideration. Because according to his calculations, a car traveling 30 miles an hour, which was the speed limit on Briggs Street here, for one second will go 45 feet. A car traveling 40 miles an hour will go 60 feet. So even if it's a one-second breach at 30 miles an hour, we're looking at a distance of 45 feet. My answer, though, is no, that it doesn't matter. But the Court should look to the dissenting Justice's reasoning to dispense with any concern that time or distance is germane to the analysis. I realize that was in the dissenting Justice's opinion. Is it part of the record, or is that something we can take judicial notice of? I believe that was a judicial notice, Your Honor, that was not in the record. What does as near as practicable mean? As reasonable as possible would be one way of putting it. There are, as drivers, there are myriad situations which might cause a driver to momentarily deviate from his lane. A fallen branch, a pedestrian, a car who weaves too close. So other than those types of things, it's an absolute stay within the lane? Stay within the lane, Judge. And I think that the reasoning behind that, the vehicle code is full of safety statutes like this. People who are staying in their lane are paying attention. It's important that drivers pay attention to what they're doing, and one of the most important ways to pay attention is to remain within your lane line if the road is designated for more than one lane of traffic. Here, however, the appellate court added on two requirements or two safety valves to the statute. It requires not only that the driving be practicable, that's settled, but it also determined that violation of the statute does not occur if the deviation doesn't endanger anyone and if it's not for an appreciable distance. This would in turn create really complicated scenarios for police officers out in the field to determine just how far is too far, how dangerous is too dangerous. Is a vehicle that deviates across the lane line endangering a car? If a car, if another motorist is 5 yards away, 10 yards away, 20 yards away, half a mile away, these are situations that call for quick and immediate action on the road. Mr. Iskwich, I'm curious. It would appear that the officer may have had sufficient grounds to stop for suspected DUI in that a number of appellate court cases have held that even weaving within a single lane is enough to stop for suspected DUI, but I don't see that as one of your arguments. Is there a reason for that? Is it that the officer didn't testify to that? There's nothing in the record. The record is very limited with respect to evidence of DUI. And the officer, all he testified to was that he saw the first breach and he said that he usually doesn't stop for the first minor transgression like that. But once he saw the second one, his suspicions were a bit more aroused and he decided at that time to take action. But even if, Your Honor, those two breaches didn't constitute reasonable suspicion with respect to the DUI, the Supreme Court of the United States has said repeatedly in Wren v. United States that an officer's subjective motivations for a stop played no role in an ordinary reasonable suspicion analysis. So whatever Deputy Bluin's personal motivations were in that instance don't really matter because he did have probable cause for purposes of the Section 11709A violation. Speaking of probable cause, what is the appropriate standard used for a traffic stop? The appellate court majority, I think, or their opinion speaks of probable cause. But is a traffic stop governed by Terry principles reasonable suspicion? It is, Judge. The appellate court did throw in the term probable cause several times in its opinion. And in Part 1 of my brief, I just wanted to make sure to emphasize that traffic stops are in fact governed by reasonable suspicion. That's not to say, however, that Deputy Bluin did not have probable cause to make an arrest for this traffic violation alone. He certainly did. He saw it with his own two eyes. But the proper standard for purposes of these kinds of traffic stops is the lesser threshold of reasonable suspicion. Isn't it true in the facts that the officer, after observing these two breaches of the line, did not immediately pull over the defendant, but rather followed him for some time in which he, the driver, moved in the left turn lane and then made two left turns? Correct, Judge. And so he didn't immediately stop him, but continued to follow him while he complied with all of the traffic laws? Correct. He made several turns into a residential area. That's the time of the stop. And the majority opinion in the court below didn't necessarily hold as much, but it suggested that the defendant's later good driving was significant in terms of measuring the reasonable suspicion. But my research reveals no case saying that a driver who breaches a provision of the vehicle code can get away with that violation as long as his subsequent driving is okay. The dissent noted again that this would create all kinds of problems for law enforcement. An individual who is speeding down Route 55, for instance, for five seconds and then reduces his speed to the limit will have violated the speeding provision. And an officer who sees that speeding still has reasonable suspicion to believe that there has been a violation, notwithstanding any future good driving. That's simply not how reasonable suspicion works. And to the extent that the appellate court relied on that reasoning to find that reasonable suspicion at that point was somewhat diluted or diminished, can't withstand scrutiny. Doesn't your interpretation of the statute allow for a great deal of discretion on the part of the officer in terms of enforcement? It does, Judge. But there's nothing wrong with an officer exercising his professional discretion in ensuring that motorists are driving as safely as possible. Officers have discretion to stop drivers for speeding, for wrong turns, for here, a lane violation. And the defendant in this case doesn't appear to be making any argument that that entails that there's some kind of unfettered discretion here. Quite simply in this case, Deputy Bluensaw, a very clear violation of the vehicle code, made the stop. According to his 19 years of professional experience, he's done many of these, after which he discovered further more serious evidence of DUI and driving with revoked license. Could you clarify something for me on the credibility of the officer? I don't know whether it was raised in the trial court or the appellate court or by which side. But I think the argument was made that since the state has the burden of proof and the credibility officer was placed in question because he had difficulty in recalling some of the details of the stop. Would you just address that? Sure, Judge. The defendant makes a lot out of the fact that Deputy Bluen didn't recall certain aspects of the stop. Not the stop itself, but what preceded the stop. That's really not pertinent to the question whether he had reasonable suspicion to stop. And to speak to your question on credibility, the trial judge's oral ruling following the hearing, there's no indication whatsoever that she found Deputy Bluen's testimony on any of these points less than credible. If you might recall, the defendant had testified at the hearing that he might have seen potholes and might have had to swerve to avoid potholes. That's not mentioned at all in the judge's oral ruling. The judge took wholesale and bought wholesale the fact that the defendant here did swerve twice over the lane lines and made two lane line breaches. So the credibility of the police officer is pretty well settled by the trial judge's comments at the post-suppression hearing arguments. The appellate court said, I think at least in two places, that no officer in this position could reasonably have believed that this defendant committed an offense. You're arguing that when he saw the vehicle cross the line, he certainly had reasonable cause or maybe even saw it had more than reasonable belief. Do you understand the appellate court's position to be that this is not an offense, simply crossing the line? Correct, Judge. Is it your position, because I think the reason we're here is because the trial court granted a motion to express evidence, the evidence being the DUI, that there could be a situation where an officer might have reasonable belief that he committed an offense of improper lane usage, could fail on making that case, but still have a good tarry stop, which would lead to the evidence of DUI. Judge, Justice Carmire, if I understand your question, that if the police officer at the suppression hearing testifies that he didn't see evidence of the lane breach, whether there would still be reasonable suspicion to make the stop? Well, no. He saw evidence of what he thought was evidence of the lane breach. Could that give rise to sufficient probable cause for the stop or reasonable belief for the stop, even if the State could not make the case for improper lane usage using what the appellate court is saying? Yes, Judge. There's two separate questions here I think you hit on. One is whether the reasonableness, and I hope this is where Your Honor is going, the first question is whether there is reasonable suspicion to make the stop. Right. And then the second question is whether or not there was an actual violation of the statute, which in this case that violation wasn't charged, so that's not going to happen, but the potential exists that at a trial on the actual charge, independent of the stop, a reasonable suspicion analysis, the defendant could come up with his own proof and the officer's testimony with respect to the stop could be challenged against the defendant's proof as far as the charge for the violation is concerned. In other words, the defendant's proof here was that he had to swerve to avoid some potholes. The trial court appears not to have believed that version of events and bought the police officer's version that there were no potholes on the road. Whether there were potholes on the road, according to the defendant, plays no role in the reasonable suspicion analysis because it's only the view of the police officer acting objectively that we look to for reasonable suspicion. But at a trial on the charge, the defendant's proof that there were potholes certainly would and could play a role in his ultimate defense to the charge. So I hope I've answered that question. Thank you. So in light of Smith and clear and unambiguous statutory language and turning to the actual facts of this case, we see that the record shows that Briggs Street is a straight roadway in Joliet. The day that the defendant was stopped was dry and it was clear and it was sunny. Deputy Bluin saw no impediments on the road, no potholes that would have caused the defendant to take evasive action and breach the lane line. He effected the stop and after which he found evidence of a revoked license and DUI. The dissent noted in its opinion that for purposes of resolving this case, Smith in the plain statutory language of section 11709A control, we respectfully request on that basis that this court reverse the decision of the appellate court and remand to the circuit court of Will County for further proceedings. Thank you, Your Honors. Thank you. Counsel for the appellee. Counsel. Your Honors, my name is Ryan Kostia. I am defense counsel for Dennis Hackett and I've been his counsel from the trial appellate to now before Your Honors. I agree with counsel that the underlying issue with regards to this matter is the reasonableness of the stop. Whether or not the officer had reasonable grounds, not probable cause, to effectuate the traffic stop for improper lane usage. And I submit clearly and succinctly he did not. One of the big overarching issues that I think is here with this case is whether or not the Hackett majority propounded a decision that was in line with this court's decision in Smith. And I submit it did. Prior to Smith, and Smith upon recollection came out by this honorable court in 1996. Prior to Smith, it used to be what I termed in my own head as kind of an either or option for improper lane usage. We note that the statute was still the same at that time as it is now. Two prongs. You've got to drive as nearly as practicable within one's lane. And if you're about to move from lane A to lane B, you better make sure that you can do so safely and not hurt or injure or somehow threaten other drivers or other pedestrians in the roadway. It used to be prior to Smith where you can have this kind of factual situation. And I think this is the general factual situation that the majority talks about in Halsell and the Albright cases. Defendant driver driving all over the roadway. Moving from lane A to lane B. Complete disregard for a turn signal. But the courts were allowing motions to suppress to be granted if the defense could show, hey, no one else was out on the roadway. No harm, no foul. These were standard corrections I was making while driving. Now this court tightened that up. And I realize that. And Smith tightened it up. Now it's a situation where the defendant must be able to show that he drove as nearly as practicable within one lane and if there was any type of lane change or lane crossing or lane touching, it sure was done in such a fashion that no one else was threatened or harmed. Smith was a little bit different factually than the facts that we have in Hackett. And I think that's really, really important. First and foremost, and it's noted in the opinion, in Smith there was a videotape. That trial court could see exactly what happened on the evening in question. In Hackett there wasn't. So we've got the testimony of both my client, Dennis, and the arresting officer, Deputy Blount Lewin, from the Will County Sheriff's Department. Second, in the Smith case, the court noted that during trial testimony, that defendant testified to one thing. Let's just call A. And the arresting officer testified to a second thing. Let's call that B. And then the trial court took a look at the video. And they made note, hey, everything that this officer testified to at the trial level, it bears out in the video itself. The officer in that case, in Smith, was clear as to what he observed. And I submit that the deputy in Lewin wasn't. Let me elaborate. The officer in Smith was able to articulate what infractions he saw before effectuating the traffic stop. Now, in Smith, the defendant was not pulled over for an improper lane usage violation. In fact, that defendant was actually pulled over for turn signal violations. But it's still applicable. The officer in Smith observed driving in a lane, in the left lane, and noted, just like the roadway here for Mr. Hackett's case on Bridge Street and Joliet, it's a two-lane roadway. This roadway in Smith, though, had a left turn lane. And this officer noted clearly and succinctly, and I think this is key, what he specifically saw before effectuating the stop. What did he see? He saw the vehicle, defendant's vehicle, left tires, travel more than six inches into the left turn lane and travel a distance of approximately 150 yards before self-correcting back into the left lane. Then he sees the vehicle swing over to the right, into the right-hand lane, where the right-hand tires of the vehicle, more than six inches, are in the right-hand lane. The rest, the remainder of the vehicle, is still in the left-hand lane and continue traveling in whatever direction the vehicle is traveling for an approximate distance of 200 yards. The officer is clear there as to what he saw, and I submit that Deputy Bluhin isn't. It almost seems to me that the argument is being made that Deputy Bluhin is clear as to what he saw or what he didn't see, and that he articulated the same. And I submit that he surely did not do so. What rule would you have us promulgate if we agree with your argument? As to what's required to pull somebody over for improper lane usage? Absolutely, that's exactly the question. Is there a distance component? Is there an endangerment component? Is there a time component? Or is there none of that? How would you articulate it? Well, there's already an endangerment component in the second part of improper lane usage. I am not here trying to promulgate that there has to be a specific duration of time or there has to be a specific distance traveled. But I am arguing that the arresting officer actually has to be able to articulate what he or she saw that would constitute a violation of subpart A. In other words, the officer would have to specifically describe what it is that he or she actually saw that says to him or herself, hey, I've got reasonable grounds to effectuate this stop. Is your argument, counsel, with what he saw or the way he articulated what he saw? And I mean, he did mention, didn't he, he testified to slightly or barely crossing the center line. He did. So aren't you more concerned with the quantification as to what he saw? I'm concerned with both, to be perfectly honest with you. I am concerned that he wasn't. When I was asking him questions, open-ended questions on Croc's examination for this motion to suppress, I specifically asked him, and maybe it was a foolish thing for me to do as counsel at that time, but I specifically asked him, not verbatim, what did you actually see that led you to think that you had reasonable grounds? What part of the vehicle was over? How much of the vehicle over? Did you see it traveling in two lanes? And he was never able to articulate a specific concrete answer as to that. Well, what about what I just said, that he slightly or barely crossed the center line? He testified to that. He testified to that in the affirmative when asked a leading question on director's examination by the prosecution. Well, I mean, there was testimony, and my question is, Smith says that when an officer sees a driver cross over a lane line and drive in two lanes of traffic, the officer has probable cause to arrest the driver for a violation of the vehicle code. So what is it about slightly or barely that doesn't fit in to what Smith said about crossing over? There's no quantification in Smith. Cross over a lane line and drive in two lanes of traffic. He testified to that. He did, but he did not testify to any distance being traveled by that motor vehicle in two lanes of traffic. Well, in response to Justice Garmon's question, you just indicated that you're not seeking a rule that says distance traveled or amount of time, nor would a rule really be workable, would it? Well, I'm not seeking a new rule. What I'm stating is I believe that the holding and rule promulgated by this court in Smith enunciates just that, and I'm asking that that will be ratified. Where in Smith does it say there has to be a certain time, duration? Where is that? It doesn't, but it notes, there's a notation made in this honorable court's holding that the vehicle not only had to drive not as nearly as practical within a lane, but had to travel in two lanes. Right. Cross over a lane line and drive in two lanes of traffic. There was never any testimony by Deputy Bluin pre-trial. That's my question. Slightly or barely crossing the lane divider. That's what he testified to, right? He did, but he didn't indicate. That's two lanes, isn't it? I don't know. He didn't testify as to that. Well, how can you slightly or barely cross a lane divider and not have been in two lanes of traffic? I don't get it. He wasn't able to articulate how far or what portion of the vehicle went over. So I don't know what Deputy Bluin saw. That was the strongest, or that is the most detailed response that he provided, and that's the response that I'm stuck with arguing before Your Honor. You don't think we need to overrule Smith to uphold your position? No, I don't. Not whatsoever. There is nothing, following up on Justice Thomas' question, there is nothing in the Smith analysis that requires a time or a length of driving in two lanes, and as Justice Thomas pointed out, if you cross the lane and you're driving a car, I guess you're driving in two lanes. How do you get around that? I agree with you that there is nothing, there is no notation or holding or ruling made in Smith that required either a distance or a time component. And if I may suggest, I don't believe that the majority in Hackett is suggesting or is adding that as an additional rule. I think they're making a notation as to a time component because there is a time and distance component noted in Smith that I think they were trying to distinguish. That was part of the factual basis of Smith but not part of the analysis, that there was necessary to be having a certain distance or a certain amount of time in the other lane, was there? I'm sorry, can you repeat that, please? Was that the factual basis talked about driving in two lanes? Yes. And I think there was some yardage or feet involved. But that wasn't part of the analysis as to the rationale for upholding the charge of improper lane usage? No, just the fact that it happened. And the second question, you've referred a couple of times, I think you've indicated that safety or endangerment is not part of it, but yet in response to Justice Garment's question, you said endangerment is a second part of the statute. Does that have any bearing on driving as nearly as practicable within one lane of traffic? In this particular instance, it does not. Okay, thank you. You're welcome. A factual question, there were two lanes hitting in the same direction or in different directions? Two lanes in each direction, a total of four lanes. Does it make a difference that it was not two lanes for each direction when you cross a line? Isn't there a danger created simply by the fact that cars could be approaching that roadway and hitting in the opposite direction and the traveling car driven by the defendant could have crossed the line just when a car is pulling out? Isn't there a danger factor when you have just two lanes each going in different directions? I suppose there could be, but there was never any allegation that Mr. Hackett's motor vehicle traveled over towards the left between the dividing lines of north and southbound travel on Bridge Street. That type of factual situation was never presented. The allegation, if any, is that there was a crossing, however momentary or slight, between the left and the right-hand northbound lanes of travel on Bridge Street. If you are relying on the factual distinctions, I think in the dissent, the justice said even crossing a line for a few seconds and using what the state just argued would result in a number of feet traveling per second. How do you respond to that? For reasons known to that justice, he made a determination to bring in what he deemed to be an outside reference in making a determination or trying to make an approximation as to time, feet, miles per hour, and distance. There was absolutely no evidence as to that promulgated at the pretrial hearing, and I suggest that same just doesn't hold much merit or weight here. And we cannot take judicial notice of scientifically known or maybe mathematically known formula that say if you're traveling 40 miles per hour, you'll travel so many feet per second. Your Honor could take judicial notice if you would like. Now, where justice got his information or his figures, I don't know. None of that is noted in his dissent. Correct. Counsel, am I to understand your argument then in response to Justice Carmier's question? Forget judicial notice for a minute, but if the officer had testified that he observed the defendant slightly or barely crossing the center line and went on to say in response to your question that that constituted driving in two lanes of traffic, then you would be okay with it? Or if he was able to articulate or testify that, in fact, I observed him driving in two lanes of traffic, I would believe I would have a much harder argument to make before your Honors than I already do. Nearly as practicable, excuse me, is not an absolute requirement that one stay actually within its lane. I cite the one case that was decided, an appellate court case that was decided after Smith, Leyendecker, that specifically held that an officer did not have reasonable grounds to effectuate a traffic stop for improper lane usage when that officer specifically observed a momentary crossing of that vehicle's right-hand tires over a fog line. Now, I do note that the factual situation is slightly different there in so much that there was testimony proffered that this was a two-lane roadway and not a four-lane roadway, that this was at nighttime and not at daytime that my client faced, and that this road faced some curvature to it. But I do think it's important to note this case and note that it stands for the proposition, at the very least, and it can be analogized to this case, that driving as nearly as practicable within one's lane is not an absolute that you must stay within your lane. There are other circumstances that there are other things that could lead one to touch a lane marker or to cross over a lane marker. And Leyendecker, I believe, is a strong case to show that even if that, in fact, happens, and it's still good case law, that in and of itself may not be enough for reasonable grounds for the officer to effectuate the stop. If we start with that premise that it's not an absolute, what does driving as nearly as practicable in one lane mean? If the highway is straight and the officer is following a driver and there's no reason, there's no, I think the state said, no limbs on the road, no pedestrians, no potholes, no nothing, and he slightly crosses the fog line or the center line, is that a violation? Is he driving as nearly as practicable? Is it the state's burden to show that that happened, or is it the defense's burden to show that he couldn't drive within that one lane as nearly as practicable? And that might be a couple of questions. It is, and I'll try to answer them as best I can. I'm submitting to your honors that there could be other things, other obstacles on the roadway, for example, that can hinder one from driving completely within one's lane. Driving requires a series of corrections. It isn't an absolute. You don't point your car one way and you're automatically in that spot, driving within that parameter of a particular roadway and carrying on. All of us have driven automobiles. All of us probably have driven automobiles today. Our hands aren't around the steering wheel. There are slight, minute corrections that always need to be made to be able to stay within one lane, to be able to move properly and safely from one lane to the next. It's always going to be there. It's always going to be existing. I submit in order for an officer to, in fact, have reasonable grounds to stop under subsection A of the improper lane usage statute, an officer should be able to articulate clearly what he or she, in fact, saw and, at a minimum, must be able to testify of crossing onto and over some type of lane marking and some type of travel while partially within a lane and partially within another lane. And I submit without anything more that an officer shouldn't have and there shouldn't be a finding that the officer had reasonable grounds to effectuate the stop. I submit that that argument is in conformity with this honorable court's decision in Smith. So whose burden is it? I think that's what Justice Carmeier wanted to know, to show that you can't drive as nearly as practicable within a single lane. Is it the burden of the prosecution to show or the defendant? I believe it is the prosecution's burden to be able to show through their witness the reasonableness of the traffic stop. And without being able to do so and be able to articulate same, I submit that motions such as mine that were filed in cases like this should ultimately be granted. Does that view change the language in Smith that said once you cross the lane you violated the statute? I don't believe it does. Thank you. Thank you. May it please the Court. Your Honors, I just have several points to make before I sit down. My able opponent's primary argument appears to be that Deputy Bluin's testimony was less than clear on whether or not he actually saw a violation of the statute. But that argument can't be reconciled with the record. Bluin testified on direct examination that he saw defendants' tires twice cross over the dividing line, and on both of those occasions he saw space between the edge of the defendant's tire and the inside edge of the dividing lane line. He said that at page 66 of the record. He said it again at page 77 of the record, at 78 of the record on cross examination, and then again on page 86 of the record on redirect examination. With respect to the defendant's contention in the trial court that there might have been potholes, Deputy Bluin was just as clear. He testified that on direct examination he was asked were there potholes. He said not that I recall, no. Again on page 79 on cross examination he was asked whether he saw potholes. And he said again not that I recall, no. Just to make sure for the record that Deputy Bluin was sincere in his belief and correct in his belief that he didn't see potholes, he was again asked on redirect whether he had to move his squad car to avoid any holes. Answer, no. Whether he hit any potholes. Answer, no. And whether he saw any potholes on that section of Brick Street. Answer, no. So to suggest that Deputy Bluin's testimony was somehow incomplete or lacking in specifics, which would have given him the reasonable suspicion to pull over the defendant for violating Section 11709A simply isn't borne out by the record. True, Deputy Bluin did not testify about how far the lane breach was. But according to Smith in the plain text of the statute, he didn't have to. Smith says that any crossing of a lane line under these circumstances constitutes a violation of the statute. And Deputy Bluin simply following that directive effectuated the stop for that lane breach. Is this the deputy's regular area of patrol? I don't know if this was his regular area of patrol, Your Honor, but I know he was an experienced patrol officer with some 19 years under his belt and who had also testified that he had made innumerable stops for violation of the statute in that time frame. It's true that my able opponent also seems to contest the fact that the defendant wasn't actually driving in two lanes of traffic when he breached the lane line. The majority in the court below also seized on this theory that slight or insignificant or momentary line breaches don't constitute actually driving in two lanes. I don't know exactly how to address that except to say that that can't possibly be right. If a lane line is breached by a tire and the tire is seen over the line for however much distance, that breach occurs, what we have there is a vehicle traveling in more than one lane of traffic. My opponent also seizes upon the Leyendecker case, which is a case from our appellate court. The facts in Leyendecker are readily distinguishable from those here, Your Honors. In that case, the testimony and proof at the suppression hearing showed that the lane roadway that was at issue was a very curving lane and the officer who effectuated the stop himself actually said that visibility was quite poor at that time of driving. This, of course, led the trial court to find that there was not reasonable suspicion under those circumstances where the very officer who made the stop said that visibility was poor and it was a really curvy road to make a stop under those circumstances. Here, by contrast, we have a flat, straight roadway in Joliet, lane for four lanes. As I mentioned in my opening remarks, the record shows that the weather was dry. The weather was clear. It was sunny. Deputy Bowen saw no impediments or potholes on the road, which might have excused a temporary or brief swerve into the other lane. And on that basis, he had reasonable suspicion to effect the stop, unlike the officer in Leyendecker who was confronted by his own admission with driving conditions which were far less favorable. You seem to indicate that the officer, by his testimony of not seeing potholes, nothing else around it, there was nothing to practically impede with the defendant's ability to drive in one lane. Is it the State's burden of proving that, or is the crossing of the line sufficient proof and then that it wasn't practicable to stay in one lane? Is that a matter of an affirmative defense? Actually, that's a question you asked of my opponent. The burden at the motion to suppress stage is actually on the defendant because it's his motion. He has to show that the stop was unreasonable under the circumstances. Now, as an affirmative defense, Your Honor, that goes to a later proceeding where charges might be brought on the actual violation. And at that proceeding, the defendant would surely be free to bring in whatever proof he might adduce with respect to driving conditions. He did so here, too. But the very narrow inquiry at the suppression hearing was only whether there was reasonable suspicion, not whether there was a defense to the ultimate charge. If the Court has no further questions, I appreciate your time this morning and request again that this Court reverse the appellate court's decision and remand to the Circuit Court of Will County. Thank you, Your Honors. Thank you, Counsel. Case number 111781, People v. Hackett, is taken under advisement as agenda number one. Thank you for your arguments.